# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**

11/06/2019

CT Log Number 536583943

**TO:** Norma Teran
Jacobs Engineering Group, Inc.
1000 WILSHIRE BLVD STE 2100
LOS ANGELES, CA 90017-2417

**RE:** **Process Served in Tennessee**

**FOR:** Jacobs Engineering Group Inc. (Domestic State: DE)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JEFFERY ELLIOTT, ET AL., PLTFS. vs. JACOBS ENGINEERING GROUP, INC., DFT. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Roane County Circuit Court, TN Case # 2019CV177 |
| **NATURE OF ACTION:** | NEGLIGENCE |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Knoxville, TN |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/06/2019 at 08:32 |
| **JURISDICTION SERVED :** | Tennessee |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service of this summons upon you, exclusive of the day, of service |
| **ATTORNEY(S) / SENDER(S):** | JOHN B. DUPREE BRIDGEFRONT LAW GROUP, PLLC 616 W. Hill Ave., 2d Floor Knoxville,, TN 37902 865-223-5184 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 11/06/2019, Expected Purge Date: 11/11/2019 |

Image SOP

Email Notification, Norma Teran norma.teran@jacobs.com

Email Notification, Cynthia Stevens cynthia.stevens@jacobs.com

Email Notification, Gerry Barrios Gerry.Barrios@jacobs.com

Email Notification, Kim Mulligan Kim.Mulligan@jacobs.com

Email Notification, Marisa Bannon Marisa.Bannon@jacobs.com

Email Notification, Burns Logan Burns.Logan@jacobs.com

Email Notification, Tammy Thompson tammy.thompson1@jacobs.com

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not of contents.

 **CT Corporation**

**TO:** Norma Teran
Jacobs Engineering Group, Inc.
1000 WILSHIRE BLVD STE 2100
LOS ANGELES, CA 90017-2417

**RE:** **Process Served in Tennessee**

**FOR:** Jacobs Engineering Group Inc.  (Domestic State: DE)

Email Notification,  Seamus McGorty  seamus.mcgorty@jacobs.com

Email Notification,  Taggart Hansen  Taggart.Hansen@jacobs.com

Email Notification,  Lee Rose  lee.rose@jacobs.com

Email Notification,  Susan Horton  Susan.Horton@jacobs.com

Email Notification,  LUCY HALATYN  lucy.halatyn@jacobs.com

**SIGNED:** C T Corporation System
**ADDRESS:** 1999 Bryan St Ste 900
Dallas, TX 75201-3140

**For Questions:** 877-564-7529
MajorAccountTeam2@wolterskluwer.com

Information displayed on this transmittal is for CT
Corporation's record keeping purposes only and is provided to
the recipient for quick reference. This information does not
constitute a legal opinion as to the nature of action, the
amount of damages, the answer date, or any information
contained in the documents themselves. Recipient is
responsible for interpreting said documents and for taking
appropriate action. Signatures on certified mail receipts
confirm receipt of package only, not contents.

# IN THE CIRCUIT COURT FOR ROANE COUNTY, TENNESSEE

**JEFFREY ELLIOT**, et al., Plaintiffs,

v.

**JACOBS ENGINEERING GROUP, INC.,** Defendant.

Civil Action No: *2019-CV-177*

## SUMMONS

**To:** **Jacobs Engineering Group, Inc. C/O Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710**

You are hereby summoned and required to serve upon **John B. Dupree,** plaintiff's attorney, whose address is: **Bridgefront Law Group, PLLC, 616 West Hill Ave., 2d Floor, Knoxville, TN 37902,** a true copy of the answer to the complaint which is herewith served upon you, within thirty (30) days after service of this summons upon you, exclusive of the day of service. You will file the original with the Court.

If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

Issued this *4* day of *November*, 2019 at *3:30* o'clock, *P* M.

Witness, **ANN GOLDSTON,** Clerk of Said Court, at office in ROANE County, Tennessee.

*Stacie Thompson DC*

**ANN GOLDSTON,** Clerk

(This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.)

## NOTICE

TO THE DEFENDANT(S):

Tennessee law provides a four thousand dollar ($4,000.00) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of this court. The list may be filed at any time and may be changed by you thereafter as necessary; however, **unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list.** Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer. TCA § 26-2-114.

Received this *5* day of *Nov*, 2019.

Deputy Sheriff

## RETURN ON SERVICE OF SUMMONS

I hereby certify and return that on the _____ *6* _____ day of *Nov* _____, 2019, I served this summons together with the complaint as follows: _____

I failed to serve this summons within thirty (30) days after its issuance because: _____

*H.3*

Sheriff-Deputy Sheriff

| | |
|---|---|
| JEFFERY ELLIOTT,<br>TERRY FAIR,<br>BARRY JOHNSON,<br>MITCHELL HURST,<br>MICHAEL MCREYNOLDS,<br>JESSICA WALLER, as next of kin of<br>ERNEST HICKMAN and PATSY HICKMAN, *deceased*,<br>JOSH SAMPSON,<br>ROBBIE WILFORD,<br>BRIAN WILFORD,<br>EDWINA ARMES,<br>JAMES H. PHILLIPS,<br>ALISHA RANDOLPH,<br>DONALD POINDEXTER,<br>JACKIE BUNCH,<br>SCOTT JENKINS,<br><br>    Plaintiffs,<br><br>v.<br><br>JACOBS ENGINEERING GROUP, INC.<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Filed 11-4 20/9
ANN GOLDSTON Time 3:30
BY _Nara Thompson_ D.C.

No. 2019-CV-177

## COMPLAINT

Comes now Plaintiffs, by and through their counsel, to bring this their action for personal injuries and wrongful death from toxic fly ash exposure. Plaintiffs allege upon personal knowledge, information and belief as to the acts as follows:

### STATEMENT OF THE CASE

1.    This is a civil action for personal injuries suffered by Plaintiffs as workers and their spouses arising out of the cleanup of over 5 million cubic yards of coal fly ash sludge released by the catastrophic failure of an impoundment dike at the Tennessee Valley

Authority's Kingston Plant on December 22, 2008. The cleanup continued for more than five years with the Plaintiffs in this case working in several jobs during the cleanup for TVA contractors other than Jacobs, some for many years. As a result of their exposure to coal fly ash, which was composed of fine particulate matter, toxic metals, such as arsenic, cadmium, chromium, lead, nickel, and vanadium, as well as radioactive material, during the cleanup operations by inhalation, skin contact, and unintentional ingestion, Plaintiffs have suffered from serious diseases, including hypertension, coronary artery disease, lung cancer, leukemia, non-melanoma skin cancer, allergic contact dermatitis (skin allergy), peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and adverse respiratory conditions, such as cough, sore throat, shortness of breath on exertion, chest pain or discomfort, bronchitis and emphysema. Plaintiffs also include the spouses of some of the cleanup workers, who have claims for loss of consortium. Plaintiffs are suing Jacobs as the contractor whom TVA hired to supervise the entire cleanup operation, including protecting worker health and safety.

## JURISDICTION AND VENUE

2. All actions complained of herein arose in Roane County, Tennessee where the toxic cleanup and plaintiffs' exposure occurred. Therefore, this court has venue and jurisdiction over the claims.

## PARTIES

3. Plaintiff **Jeffery Elliott** is a citizen of Grainger County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash

2

Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the hypertension, and possible other diseases, suffered by Plaintiff.

4.    Plaintiff **Terry Fair** is a citizen of Loudon County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the hypertension, and possible other diseases, suffered by Plaintiff.

5.    Plaintiff **Barry Johnson** is a citizen of Meigs County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the hypertension, and possible other diseases, suffered by Plaintiff.

6.    Plaintiff **Mitchell Hurst** is a citizen of Gordon County, Georgia. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the respiratory conditions, and possible other diseases, suffered by Plaintiff.

3

7.   Plaintiff **Michael McReynolds** is a citizen of Blount County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the respiratory conditions, and possible other diseases, suffered by Plaintiff.

8.   Plaintiff **Jessica Waller** is the daughter and next of kin of **Ernest Hickman** and **Patsy Hickman**, and is a citizen and resident of Meigs County, Tennessee. Ernest Hickman and Patsy Hickman were also citizens and residents of Meigs County, Tennessee prior to their deaths. Ernest Hickman was a cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the hypertension, emphysema, anthracosis, coronary artery disease, and possible other diseases, suffered by Ernest Hickman and Patsy Hickman.

9.   Plaintiff **Josh Sampson** is a citizen of Roane County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the cancer and respiratory conditions, and possible other diseases, suffered by Plaintiff.

4

10. Plaintiff **Brian Wilford** is a citizen of Morgan County, Tennessee. Plaintiff **Brian Wilford** was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the respiratory conditions, and possible other diseases, suffered by Plaintiff.

11. Plaintiff **Robbie Wilford** is a citizen of Morgan County, Tennessee. Plaintiff **Robbie Wilford** was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the lung and respiratory conditions, and possible other diseases, suffered by Plaintiff.

12. Plaintiff **Edwina Armes** is a citizen of Morgan County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the chronic obstructive pulmonary disease and respiratory conditions, and possible other diseases, suffered by Plaintiff.

13. Plaintiff **James H. Phillips** is a citizen of Morgan County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the

5

malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the neurological and respiratory conditions, and possible other diseases, suffered by Plaintiff.

14.     Plaintiff **Alisha Randolph** is a citizen of Cumberland County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the respiratory conditions, and possible other diseases, suffered by Plaintiff.

15.     Plaintiff **Donald Poindexter** is a citizen of Morgan County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the respiratory conditions, and possible other diseases, suffered by Plaintiff.

16.     Plaintiff **Jackie Bunch** is a citizen of Morgan County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the heart attack, blood clots, respiratory conditions, and possible other diseases, suffered by Plaintiff.

6

17. Plaintiff **Scott Jenkins** is a citizen of Cumberland County, Tennessee. Plaintiff was employed as an operator/cleanup worker during the cleanup of the TVA Kingston Ash Spill and was exposed to harmful levels of fly ash as a direct and proximate result of the malicious, fraudulent, reckless, and/or negligent acts and omissions of Defendant. This exposure was at least a substantial factor in causing or aggravating the blood clots, respiratory conditions, and possible other diseases, suffered by Plaintiff.

18. Defendant **Jacobs Engineering Group, Inc.** (hereinafter "Jacobs") is a foreign corporation with its principal place of business in Pasadena, California. Jacobs Engineering Group, Inc. was licensed to do business, and was and is doing business, in the State of Tennessee, Roane County, and elsewhere and is directly liable for all actions contained herein. Jacobs may be served through its Registered Agent for Process, CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, TN 37929-9710.

7

## FACTUAL ALLEGATIONS

**The Massive Kingston Coal Ash Cleanup**

19. The claims of the Plaintiffs in this case arose as a result of the cleanup of the Tennessee Valley Authority ("TVA") massive coal ash spill, which released approximately 5.4 million cubic yards of coal ash sludge from the Kingston Steam Plant into the Emory River and surrounding land and environs on December 22, 2008. The cleanup began almost immediately, with TVA contracting with various companies to bring in heavy equipment, barges, dredges, and hundreds of workers to remove the coal ash from surrounding properties and from the Emory River and its tributaries.

20. The initial emergency response was coordinated by the United States Environmental Protection Agency ("EPA") and its consultant Tetra Tech. On January 11, 2009, TVA took over the role of lead federal agency for the emergency response and was the lead agency for the subsequent removal and response actions as required by orders from the Tennessee Department of Environment and Conservation ("TDEC") and the EPA. The ash cleanup operations were conducted over a period of 5 years, with November 2014 being the end of the Non-Time Critical Removal Action and TVA certifying in August 2015 that it had completed all the required actions, including ecological restoration actions.

21. Plaintiffs in this case worked in several jobs during the cleanup, some for many years. They operated heavy equipment, such as pan scrapers, front-end loaders, track hoes, dump trucks, and bulldozers, moving coal ash from one place to another, loading it on railroad cars to be shipped to Alabama, and stacking it in a new on-site landfill. They

8

drilled bore holes and monitoring wells in coal ash and took samples of coal ash. They were laborers moving coal ash by shovel and rake. They operated dredge equipment on barges in the Emory River dredging coal ash from the river bottom. They directed traffic on the cleanup site or were flaggers on the roads in and around the site where heavy equipment operated. They cleaned coal ash off vehicles and other equipment before they were permitted to travel the public roads.

22. Jacobs contracted with TVA to be the "independent safety contractor" for the cleanup, so as to provide a safe environment for local community and all workers involved in the cleanup of the toxic coal fly ash, including individual independent contractors such as Plaintiffs. At all times material hereto, Jacobs acted outside the scope of direction and authority conferred by TVA and contrary to the Site Wide Safety and Health Plan (SWSHP) it created and adopted.


**Properties of Coal Ash**

23. Several samples of the coal ash released by TVA were taken by TVA, TDEC, EPA, and third parties, and the following constituents, among others, were determined to be present in the ash: particulates, respirable particulates, silica-quartz, arsenic, cadmium, chromium, lead, mercury, nickel, radionuclides (Ra,226 Ra,228 isotopes of uranium and thorium), and vanadium. Analyses of the particle sizes of coal ash have found a significant fraction of particles less than 2.5 microns in diameter, often referred to as PM2.5.

24. Epidemiological studies on exposure to constituents of coal ash show:

9

a. Lead in coal ash can cause hypertension.

b. Arsenic, cadmium, and fine particulate matter in coal ash can cause coronary artery disease.

c. Arsenic, cadmium, chromium, and fine particulate matter in coal ash can cause lung cancer.

d. Ionizing radiation in coal ash can cause leukemia.

e. Arsenic in coal ash can cause non-melanoma skin cancer.

f. Chromium and nickel in coal ash can cause allergic contact dermatitis (skin allergy).

g. Arsenic and lead in coal ash can cause peripheral neuropathy.

h. Chromium, fine particulate matter, nickel, and vanadium in coal ash can cause asthma.

i. Cadmium and fine particulate matter in coal ash can cause chronic obstructive pulmonary disease.

j. Fine particulate matter and other coal ash constituents can cause respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

25. Defendant's own Site Wide Safety and Health Plan (SWSHP) to address the safety and health management and practices for the TVA Kingston Ash Recovery Project contains a section entitled "Chemical Hazards," which lists constituents of fly ash as a chemical hazard and contains a subsection on "Properties of Fly Ash Components." Table 4-2 lists fly ash constituents, routes of exposure, symptoms of exposure, and target organs. Routes of exposure for the constituents include inhalation, skin contact, eye contact, and

10

ingestion. Symptoms of exposure associated with fly ash constituents include irritation of the eyes, skin, throat, nose and upper respiratory system, cough, dyspnea, wheezing, progressive respiratory symptoms (silieosis), dizziness, headache, nausea, vomiting, diarrhea, stomach cramps, insomnia, anorexia, ulceration of nasal septum, dermatitis, gastrointestinal disturbance, peripheral neuropathy, skin burns, gastroenteritis, muscle spasm, slow pulse, extrasystoles, hypokalemia, pulmonary edema, breathing difficulty, chest tightness substernal (occurring beneath the sternum), pain, headache, chills, muscle aches, anosmia (loss of the sense of smell), emphysema, proteinuria, mild anemia, cancer, fibrosis (histologic), decreased pulmonary function, weight loss, dermatitis, diffuse nodular fibrosis, respiratory hypersensitivity, asthma, lassitude, weakness, exhaustion, insomnia, facial pallor, anorexia, weight loss, malnutrition, constipation, abdominal pain, colic, anemia, tremor, paralysis wrist ankles, encephalopathy, kidney disease, hypertension, and sensitization dermatitis.

**Exposure**

26. The one constant for the Plaintiffs in their years of employment as coal ash cleanup workers was their exposure to coal fly ash. Most of the Plaintiffs worked in the so-called "exclusion zone," which was where the ash cleanup activities were the most intense.

27. Plaintiffs were frequently exposed to clouds of fly ash on the site as a result of site activities, which they inhaled.

28. Plaintiffs' clothing was covered with fly ash which exposed their skin to fly ash and its toxic constituents.

11

29. The interior of the earth moving equipment Plaintiffs operated was covered in fly ash, which they inhaled.

30. Plaintiffs were not permitted to change clothes or shower at the ash recovery site, and, as a result they carried fly ash on their clothes and shoes into their personal vehicles and into their homes.

31. Plaintiffs' exposure to fly ash was excessive and exceeded any safe levels for particulate matter and for exposure to fly ash constituents.

**Monitoring**

32. Because of the range of serious illnesses that coal ash and its constituents are capable of causing, Defendant Jacobs was required to implement a monitoring program to protect the health of the cleanup workers.

33. The monitoring was deliberately manipulated by Defendant to allow Defendant to claim that no workers were exposed to dangerous levels of fly ash.

34. Workers stationed in the exclusion zone, where ash was never suppressed and was constantly airborne would not be selected for mobile monitoring. Had these workers been allowed to wear the mobile monitors, the readings of toxic constituents would have been high.

35. Had the air monitoring readings at the site revealed high levels of toxic constituents, work on site would have stopped. As such, the monitoring was intentionally manipulated to prevent the stoppage of work and to meet deadlines for remediation progress.

12

36. In addition, the monitoring was manipulated in an effort to deceive the residents of the surrounding county and the workers on site into believing that the air quality was safe.

37. Defendant's own documents also show frequent high levels of coal ash dust on the ash spill site, which would have produced higher exposure to Plaintiffs than shown by the monitoring results.

38. Jacobs manipulated monitoring results by watering down stationary monitors and taking readings only when wet or raining.

39. Jacobs did not randomly select workers for mobile monitoring of coal fly ash exposure.

40. Jacobs deliberately tampered with personal dust monitors by tapping out the contents.


**Jacobs' Additional Negligent Acts and Omissions**

41. Jacobs failed to provide decontamination stations for workers;

42. Jacobs did not allow workers to wear dust masks, threatening to fire those who did, taking dust masks away from employees who wore them, and destroying dust masks that were available on the site.

43. Jacobs did not warn workers about the dangers of exposure to fly ash.

44. In fact, Jacobs deliberately told workers they could safely "eat a pound of fly ash every day," which is not true.

45. Jacobs failed to train employees/independent contractors/subcontractors in applicable policies or procedures for working at the Site and for day-to-day safety for health, operations and management.

13

46. Jacobs failed to implement provisions of its contract with TVA for the protection of Plaintiffs from fly ash exposure.

47. Jacobs failed to implement provisions of the approved Sitewide Safety and Health Plan (SWSHP) for protection of Plaintiffs.

48. Jacobs failed to hire employees with appropriate health and safety knowledge regarding fly ash to protect the Plaintiffs and failed to adequately train and supervise these employees in conducting their responsibilities.

49. Jacobs failed to provide measures required by contract and approved plans to prevent coal fly ash dust from becoming airborne on the Site creating excessive exposure of Plaintiffs.

50. Jacobs failed to comply with approved plans by continuing fly ash cleanup work during high wind events resulting in excessive exposure to Plaintiffs.

**Governmental Contractor Immunity**

51. TVA's cleanup of the fly ash at the Kingston site constituted a commercial activity, because it resulted from TVA's generation and sale of electricity, which is a commercial activity. Defendant is not immune from suit under any theory of government contractor derivative immunity, because TVA is not immune from suit for its commercial activities.

52. Even if TVA were immune from suit in its cleanup of coal ash released from the generation of electricity, Jacobs is not immune from suit because it acted contrary to the will of TVA by:

    a. Deliberately manipulating or tampering with monitoring results or processes;

14

b. Failing to inform TVA safety officials or repeated complaints regarding health problems due to fly ash;

c. Failing to comply with the provisions of the Health and Safety Plan with respect to voluntary use of dust masks;

d. Threatening workers when they asked for dust masks or respirators;

e. Communicating to workers that fly ash was safe to consume; and

f. Otherwise failing to train or warn workers about the dangers of excessive fly-ash exposure.

**Statute of Limitations**

156. Defendant is expected to raise an affirmative defense of the statute of limitations for the claims in this First Amended Complaint. Plaintiffs are not required to negate that affirmative defense in their complaint.

157. Under Tennessee law the statute of limitations is tolled until the plaintiff becomes aware of facts sufficient to put a reasonable person on notice that he or she has suffered an injury as a result of the defendant's wrongful conduct. The question of whether an individual plaintiff exercised reasonable care and diligence to discover his claims is a factual question for the finder of fact.

158. Each Plaintiff listed in this First Amended Complaint exercised reasonable care and diligence to discover their injury and whether it was caused or contributed to by Defendant's negligent conduct. Many of them consulted physicians in an attempt to determine whether their illnesses were caused or contributed to by their exposure to fly ash and its constituents. They ultimately consulted with attorneys who investigated the

15

facts and filed this lawsuit. Despite the exercise of reasonable care and diligence, each Plaintiff was unable determine that their illness was caused or contributed to by Defendant's negligent conduct until less than one year before the original Complaint was filed in this case.

159. Defendant had a duty under the Occupational Safety and Health Act (OSHA) and regulations and under the Sitewide Health and Safety Plan (SWHSP) to disclose facts to Plaintiffs concerning the extent of their exposure to fly ash and the health effects that can be caused by excessive exposure to fly ash and its constituents. Instead, Defendant took affirmative steps to conceal facts that gave rise to Plaintiffs' causes of action, including deliberately manipulating monitoring tests to hide the excessive exposure of Plaintiffs to fly ash, communicating to Plaintiffs that test results showed safe levels of fly ash, communicating to Plaintiffs that fly ash was safe to consume,  and otherwise failing to train or warn workers about the dangers of excessive fly ash exposure.

160. To this day, Defendant continues to publicly deny that Plaintiffs were exposed to excessive amounts of fly ash and that any of their illnesses could have been caused by their exposure.

161. Each Plaintiff reasonably and justifiably relied upon Defendant's affirmative misrepresentations about their exposure to fly ash and the lack of health effects from that exposure.

162. Defendant's failure to provide information to Plaintiffs that it was under a duty to disclose renders its failure to disclose known facts fraudulent.

16

## COUNT ONE: NEGLIGENCE

163. Plaintiffs refer to and reallege Paragraphs 1-162 of this First Amended Complaint and incorporate them by reference as though fully set forth herein.

164. Defendant owed a duty of care to the Plaintiffs to prevent the Plaintiffs at the Kingston site from being exposed to potentially harmful levels of fly ash or any constituent element found in fly ash. These obligations included, as provided in the TVA contract and the Sitewide Health and Safety Plan: (1) air monitoring; (2) dust control; (3) the use of personal protective equipment at the site; and, (4) worker training. Defendant owed a duty to the Plaintiffs to exercise reasonable care in providing these services.

165. After a full and fair jury trial in the U.S. District Court for the Eastern District of Tennessee in *Adkisson, et al., v. Jacobs Engineering Group, Inc.*, No. 3:13-CV-505. During the course of that trial, the testimony showed that Jacobs Safety Manager Tom Bock said you could eat the ash for breakfast and that the workers did not need dust masks because the ash was not harmful; Mr. Bock from Jacobs told a labor supervisor that laborers could not wear masks on the site; Mr. Bock told workers to collect any dust masks and get them off of the site; Jacobs banged out filters from the personal air monitors thus altering results; witnesses saw Jacobs tampering with the tests and that Jacobs told them that the ash was safe;   Mr. Bock told workers the fly ash was not harmful and it was safe to eat or drink; the stationary air monitors were washed because they were getting high readings -a picture at the <u>Adkisson</u> trial showed a water truck spraying off trees and air monitors; Jacobs Safety Manager Tom Bock told one witness that the public could not know about the dust and that if a mask was brought from home,

17

the worker would be terminated; Tom Bock would not allow masks at the site, told workers at the safety meeting the ash was safe and had masks gathered and thrown away; supervisors were told by Mr. Bock told to let the workers know that the ash was safe - that you could eat it and it would not hurt you; workers had no reason to question Jacobs - Jacobs told the workers that you could eat a pound of eat a day and that the site was safe. Further, during the trial, Defendant exercised its opportunity to present witnesses and exhibits and to cross examine plaintiffs' witnesses. In its verdict, the jury found:

a. Plaintiffs have proved, by a preponderance of the evidence, that Defendant failed to adhere to the terms of its contract with TVA, or the requirements set forth in the site wide safety and health plan for the Kingston site;

b. Plaintiffs have proved, by a preponderance of the evidence, that Defendant failed to exercise reasonable care in carrying out the duties that it owed to the Plaintiffs;

c. Plaintiffs have proved, by a preponderance of the evidence, that Defendant's breach of duty was capable of causing the following injuries or illnesses alleged by the Plaintiffs: hypertension, coronary artery disease, lung cancer, leukemia and other hematologic malignancies, skin cancer, allergic contact dermatitis, peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

166. The jury verdict was entered by this Court.

167. Through offensive collateral estoppel these jury findings are binding on Defendant in this case and cannot be contested by Defendant.

168. Defendant breached its duties to Plaintiffs by, among other acts or omissions:

    a. failing to randomly select workers for mobile monitoring of coal fly ash exposure;

    b. deliberately manipulating the monitoring results of coal fly ash exposure;

    c. failing to inform TVA safety officials of repeated complaints regarding health problems due to fly ash;

    d. failing to honor prescriptions for dust masks or respirators;

    e. falsely communicating to Plaintiffs that fly ash was safe to consume;

    f. threatening Plaintiffs when they asked for dust masks or respirators.

    g. failing to train employees/independent contractors/subcontractors in applicable policies or procedures for working at the Site and for day-to-day safety for health, operations and management;

    h. failing to implement provisions of its contract with TVA for the protection of Plaintiffs from fly ash exposure;

    i. failing to implement provisions of the approved Sitewide Safety and Health Plan (SWSHP) for protection of Plaintiffs;

    j. failing to hire employees with appropriate health and safety knowledge regarding fly ash to protect the Plaintiffs and failed to adequately train and supervise these employees in conducting their responsibilities;

    k. improperly destroying personal protective equipment that could have been used by the Plaintiffs and retaliating against Plaintiffs seeking to use it;

19

l. failing to provide measures required by contract and approved plans to prevent coal fly ash dust from becoming airborne on the Site creating excessive exposure of Plaintiffs; and

m. failing to comply with approved plans by continuing fly ash cleanup work during high wind events resulting in excessive exposure to Plaintiffs.

169. Each of the breaches of duty set out above were a cause in fact and proximate cause of illnesses and damages to Plaintiffs. The breaches resulted in Plaintiffs' excessive exposure to coal fly ash and its constituents which are capable of causing Plaintiffs' illnesses and damages. Each Plaintiff's exposure to coal fly ash was a substantial factor in causing their illnesses and/or aggravating preexisting illnesses and conditions, including hypertension, coronary artery disease, lung cancer, leukemia and other hematologic malignancies, skin cancer, allergic contact dermatitis, peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

170. As a proximate result of Defendant's negligent acts or omissions, each Plaintiff has suffered damages and will suffer damages in the future, including past medical expenses, future medical expenses, past loss of income, future loss of income, pain and suffering, and loss of quality of life.

20

## COUNT TWO: NEGLIGENT MISREPRESENTATION

171. Plaintiffs refer to and reallege Paragraphs 1-170 of this First Amended Complaint and incorporate them by reference as though fully set forth herein.

172. At all times relevant hereto, Jacobs was acting in the scope and course of its business and pursuant to a contract with TVA for the cleanup of toxic coal fly ash at the Kingston site pursuant to which it had a pecuniary interest.

173. Jacobs represented to Plaintiffs that the fly ash at the Kingston site did not contain toxic constituents or hazardous substances and was otherwise safe.

174. Jacobs made these material representations of fact so that Plaintiffs would commence and/or continue to work on the Kingston site and do so without respirators or personal protective equipment.

175. Jacobs knew that these representations about the lack of toxicity of the coal fly ash was false and/or did not exercise reasonable care in obtaining or communicating the information.

176. Despite having a duty to do so, Jacobs failed to exercise reasonable care in its representations to Plaintiffs.

177. Plaintiffs reasonably and justifiably relied on Jacobs' representations that the toxic fly ash at the Kingston site was safe thereby resulting in Plaintiffs' excessive exposure to coal fly ash and its constituents which are capable of causing Plaintiffs' illnesses and damages, and Plaintiffs have suffered damages as a proximate result thereof.

178. Each Plaintiff's exposure to coal fly ash was a substantial factor in causing their illnesses and/or aggravating preexisting illnesses and conditions, including hypertension, coronary

21

artery disease, lung cancer, leukemia and other hematologic malignancies, skin cancer, allergic contact dermatitis, peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

179. As a proximate result of Defendant's negligent misrepresentation, each Plaintiff has suffered damages and will suffer damages in the future, including past medical expenses, future medical expenses, past loss of income, future loss of income, pain and suffering, and loss of quality of life.

## COUNT THREE: FRAUDULENT/INTENTIONAL MISREPRESENTATION

180. Plaintiffs refer to and reallege Paragraphs 1-179 of this First Amended Complaint and incorporate them by reference as though fully set forth herein.

181. At all times relevant hereto, Jacobs was acting in the scope and course of its business and pursuant to a contract with TVA for the cleanup of toxic fly ash at the Kingston site pursuant to which it had a pecuniary interest.

182. Jacobs represented to Plaintiffs that the fly ash at the Kingston site did not contain toxic constituents or other hazardous substances and was otherwise safe.

183. Jacobs made these material representations of fact so that Plaintiffs would commence and/or continue to work on the Kingston site and do so without respirators or personal protective equipment.

184. Jacobs knowingly and recklessly made these material representations about the toxicity of fly ash to the Plaintiffs, or without belief in their truth.

22

185. Despite having a duty to do so, Jacobs failed to exercise reasonable care in its representations to Plaintiffs.

186. Jacobs knew that these material representations about the toxic coal fly ash were false at the time it made them to the Plaintiffs, or acted with reckless disregard as to whether or not these material representations were false.

187. Plaintiffs reasonably relied on Jacobs' material representations that the toxic fly ash at the Kingston site was safe thereby resulting in Plaintiffs' excessive exposure to coal fly ash and its constituents which are capable of causing Plaintiffs' illnesses and damages, and Plaintiffs have suffered damages as a proximate result thereof.

188. Each Plaintiff's exposure to coal fly ash was a substantial factor in causing their illnesses and/or aggravating preexisting illnesses and conditions, including hypertension, coronary artery disease, lung cancer, leukemia and other hematologic malignancies, skin cancer, allergic contact dermatitis, peripheral neuropathy, asthma, chronic obstructive pulmonary disease, and respiratory conditions, including cough, sore throat, dyspnea on exertion, chest pain or discomfort, bronchitis and emphysema.

189. As a proximate result of Defendant's intentional misrepresentation, each Plaintiff has suffered damages and will suffer damages in the future, including past medical expenses, future medical expenses, past loss of income, future loss of income, pain and suffering, and loss of quality of life.

## COUNT FOUR: PUNITIVE DAMAGES

190. Plaintiffs refer to and reallege Paragraphs 1-189 of this First Amended Complaint and incorporate them by reference as though fully set forth herein.

191. Jacobs acted maliciously, fraudulently and recklessly in exposing Plaintiffs to excessive amounts of coal fly ash, in deliberately manipulating or tampering with monitoring results or processes, in threatening workers when they asked for dust masks or respirators, and by falsely communicating to workers that fly ash was safe to consume.

192. Jacobs intentionally falsified, destroyed or concealed records containing material evidence with the purpose of wrongfully evading liability in this case, including tampering with monitoring results.

193. Jacobs failed to comply with applicable federal and state regulations setting forth specific standards applicable to its coal ash cleanup and intended to protect Plaintiffs, including OSHA rules, the EPA Administrative Order and Agreement on Consent, the TVA contract, and the Sitewide Health and Safety Plan.

194. As a result of Jacobs' malicious, fraudulent, and reckless acts, each Plaintiff is entitled to recover punitive damages from Jacobs.

WHEREFORE, Plaintiffs and members of the above proposed Class respectfully request this Court to grant the following relief:

   a. Award each Plaintiff an amount exceeding $75,000 sufficient to compensate them for their damages for past medical expenses, future medical expenses, past loss of income, future loss of income, pain and suffering, and loss of quality of life.

24

b. Award punitive damages to each Plaintiff in an amount sufficient to punish Jacobs and deter similar misconduct in the future by Jacobs and others.

c. Award attorney fees and costs and expenses incurred in connection with the litigation of this matter.

d. Award such other and further relief as this Court may deem just, proper, and equitable.

A JURY IS DEMANDED TO TRY THIS CASE.

Respectfully submitted this ____ day of _____, 2019.


_____
John B. Dupree
Bridgefront Law Group, PLLC
616 W. Hill Ave., 2d Floor
Knoxville, TN 37902
(865) 223-5184


_____
Keith D. Stewart
Market Street Law, PLLC
625 Market Street, 7th Floor
Knoxville, TN 37902
(865) 245-0989

25

**COST BOND**

    We acknowledge ourselves as surety for all costs, taxes and damages in this case in accordance with T.C.A. 20-12-120.

Keith D. Stewart